### ABRAM J. LEWIS vs. LAMBERT S. NORWOOD.

The courts of this State recognize insolvent discharges in Maryland, which do not affect the contract.

RULE to show cause why an exoneretur should not be entered on a bail piece, on the ground that, since the entry of bail, the defendant, Norwood, had been discharged under the insolvent laws of Maryland.

*Bayard,* for defendant, moved to make the rule absolute, and cited, 1 *Harr. Rep.* 367; 3 *Ibid* 271; 4 *Wheat. Rep.* 200; and produced evidence that the courts of Maryland gave effect to insolvent discharges by the courts of Delaware.

*Rogers, jr.,* opposed the motion, on the ground that the Maryland insolvent law did not discharge the body only, but the contract, and was such as the comity of our courts could not respect. It was in effect a State bankrupt law; and unconstitutional as to contracts made out of the State. The creditor in this case was a citizen of Pennsylvania. (4 *Wheat. Rep.* 200; *Pet. Dig.* 325.)

*Mr. Bayard,* replied, that the decision in Sturges *vs.* Crowningshield, was that the law of the State, so far as it contravenes the Constitution of the United States is void, and no further; so far as it is constitutional the courts will hold it good and carry it out. The question in that case was, whether a State could pass a bankrupt law, and the result was, that when Congress had not acted, a State could pass such law to operate within its own borders, but that it would be unconstitutional and inoperative as to citizens of other States. It decides that imprisonment of the person was only a mode of remedy for recovery of the debt, and could be abolished without affecting the contract. A State law then, whether a bankrupt law or an insolvent law, so far as it operates to discharge *the person* from prison, is constitutional in reference to citizens of different States, as well as citizens of the State making the discharge; and *to that extent* such a discharge will be recognized by the comity of this court towards the courts of any other State reciprocating this comity.

As to the Maryland law and the Maryland discharges, the effect is precisely the same as our laws and discharges, though in different language. It is an insolvent law and not a bankrupt law. It requires an assignment by the insolvent of all the property he has, and discharges him from his debts; providing, however, that all future acquisitions of property should be liable to his debts. This is no more than a discharge of the person; nor more than the effect of our

own discharges, which on assignment of the debtor's property discharges his person, leaving property subsequently acquired liable to his debts.

The defendant here asks an exoneretur of his bail, whose obligation is merely for the production of the debtor's body to be imprisoned: his application to the court is to recognize the discharge in Maryland so far as to discharge the defendant's person from imprisonment. If we were seeking to give to this discharge, or to the law of Maryland here, the effect of discharging the defendant's subsequently acquired property from liability, the court would regard such an effect of the law as unconstitutional, and would not extend its comity thus far; but when we ask to give it such an effect as is perfectly consistent with the Constitutions of the United States and of this State, it in nowise conflicts with our laws or practice; but is doing the same thing which we would do ourselves.

The court made the rule absolute.

*Bayard,* for the rule.
*Rogers, jr.,* contra.

---

### .HARVEY BELCHER *vs.* ADAM GRUBB.

A debt due by judgment and execution levied, is subject to the process of foreign attachment; and the court will stay the execution until appearance.

JUDGMENT, November term, 1846. Fi. fa. issued May 5, 1847, for $265 62, "levied on goods, &c., per inventory and appraisement."

On affidavit filed January 2, 1847, that a sum exceeding $50 was due from Harvey Belcher, a non-resident, to Wm. Amor, a foreign attachment was issued to May term, 1847, and laid in the hands of the defendant, Adam Grubb, on the same day. The garnishee appeared May 13, 1847, and answered, that at the time of attachment laid, he was indebted to Harvey Belcher for a judgment obtained against him at suit of said H. B., at the last November term; amount to be ascertained by the prothonotary, and which amount was ascertained on the 5th of May, 1847, to be $265 62, debt and interest, on which an execution fi. fa. issued the same day, and was levied on the garnishee's goods, &c., to the amount; but said goods have not been sold, and said amount is still (otherwise) due and unpaid. After this answer was made, *Patterson,* for the defendant in this exe-